Jerry E. RANKE, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 88–1281.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1989.

Decided April 28, 1989.

Richard F. Walsh, Chicago, Ill., for petitioner-appellant.

Theodore T. Paulas, Asst. U.S. Atty., Chicago, Ill., for respondent-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

On April 30, 1984, Petitioner–Appellant Jerry Ranke entered a plea of nolo contendere to a two-count information that charged him with mail fraud in violation of 18 U.S.C. § 1341. The district court sentenced Ranke to one year and one day in prison on Count One and to a consecutive sentence of four years probation on Count Two. In addition, the court ordered Ranke to make restitution in the amount of $35,-000. Ranke is currently serving the period of probation.

After the Supreme Court rendered its decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), Ranke moved to vacate his conviction and to dismiss the information on the ground that the information was based on an intangible rights theory and failed to charge a deprivation of property. The district court denied the motion and Ranke appealed. This court remanded the case to the district court for reconsideration in light of *United States v. Holzer*, 840 F.2d 1343 (7th Cir.1988). The district court again denied the motion, and we now reach the merits of Ranke's appeal. We affirm.

## I.

Ranke was a Senior Project Manager for Inland Ryerson Building Systems ("Building Systems"), a general contracting company which hired subcontractors to perform building construction work. Ranke's duties included soliciting bids from subcontractors, awarding subcontracts, and overseeing construction projects. Ranke's codefendant, Nat D'Angelo, was President of Century Concrete Construction Company ("Century"). Century acted as sub-contractor on two of Building Systems' construction projects, the Unarco–Leavitt Tube Mill project and the Roskin Motor Service Warehouse project. The mail fraud charges to which Ranke pled nolo contendere involved a kickback scheme devised and carried out by Ranke and D'Angelo. The scheme entailed raising Century's bid on the Unarco–Leavitt project and issuing extra work orders to Century on both projects, so that Century could make kickback payments to Ranke.

Ranke was originally charged in an indictment that contained eighteen counts of mail fraud. That indictment was dismissed by the district court as being "duplicitous." After a period of plea negotiations, the government filed a superseding two-count information to which Ranke entered his plea. Ranke now challenges the sufficiency of the information.

Ranke claims on appeal that although the original indictment sufficiently alleged a scheme to deprive Building Systems of money or property, the superseding information alleged only a deprivation of intangible rights, *i.e.*, Building Systems' right to the honest services of its employees.[1] In support, Ranke makes three arguments. First, Ranke contends that as a result of the plea negotiations, certain changes in language were adopted in the superseding information which rendered the information insufficient to allege a deprivation of property. Second, Ranke argues that the factual basis for the plea, as shown by the plea agreement and the transcript of the plea hearing, supports only an intangible rights theory of mail fraud. Third, Ranke asserts that the superseding information alleged only a *"George-*type scheme," referring to *United States v. George*, 477 F.2d 508 (7th Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 155, 38 L.Ed.2d 61 (1973), and that that type of scheme does not deprive anyone of property as required by *McNal-*

---

1. For ease of discussion, we will use the term "intangible rights" to denote the type of right discussed in *McNally, e.g.*, the right to honest and loyal services from an employee. We of course recognize that property rights may be intangible. *See Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987).

*ly.* The thrust of each argument is the same: that the information failed to allege that the secret payments which Ranke received represented money to which Building Systems was entitled. Although Ranke weaves the three arguments together, for the sake of clarity, we will address each argument separately.

## II.

By pleading nolo contendere, Ranke waived all defects in the information except lack of subject matter jurisdiction and failure to charge an offense. *United States v. Hancock,* 604 F.2d 999, 1001 (7th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 521, 62 L.Ed.2d 420 (1979); *United States v. Bessemer and Lake Erie R.R.,* 717 F.2d 593, 597–98 (D.C.Cir.1983). Ranke contends that the superseding information failed to charge the offense of mail fraud because it alleged only a deprivation of intangible rights. The charging paragraphs in both the indictment and the superseding information stated as follows: [2]

### JERRY E. RANKE,

defendant herein, did unlawfully, wilfully and knowingly devise and intend to devise a scheme and artifice to obtain money by means of false and fraudulent pretenses and representations and to defraud Building Systems of the following:

(a) Its right to have the company's business and affairs conducted honestly, impartially, free from deceit, craft, trickery, corruption, fraud, undue influence, dishonesty and conflict of interest;

(b) Its right to the conscientious, loyal, honest, faithful, disinterested and unbiased service, decisions, actions and performance of duties by defendant JERRY E. RANKE in his capacities as Senior Project Manager, free from corruption, partiality, wilful omission, bias, dishonesty, misconduct, conflict of interest and fraud;

(c) Certain secret profits and money obtained by defendant JERRY E. RANKE through the misuse of his employment by Building Systems.

We find, as did the district court, that although subparagraphs (a) and (b) allege the deprivation of intangible rights, subparagraph (c) alleges the deprivation of money. The district court, relying on *United States v. Eckhardt,* 843 F.2d 989, 997 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 106, 102 L.Ed.2d 81 (1988), found the charge in subparagraph (c) to be an "easily separable" charge and therefore sufficient to state an offense. We agree.[3]

Ranke contends, however, that the factual allegations in the information go to support only the charges in subparagraphs (a) and (b) and not subparagraph (c). He asserts that the following changes in language between the indictment and the information demonstrate that the factual allegations fail to support a charge of property deprivation:

*Change 1*

Indictment: "It was further a part of the scheme that on or about April 8, 1980, JERRY E. RANKE and NAT D'ANGELO, defendants herein, would and did raise and cause to be raised Century's bid to Building Systems on the Unarco–Leavitt Tube Mill concrete subcontract from $970,000 to $1,160,000 *in order to generate funds for* a $190,000 kickback payment to JERRY E. RANKE."

Information: "It was further a part of the scheme that on or about April 8,

---

**2.** The language quoted is from the superseding information. The minor differences between this paragraph and the charging paragraph of the indictment are of no consequence and are not at issue here.

**3.** Ranke also relies on *Eckhardt* to argue that the charge in subparagraph (c) is *not* easily separable. The argument is meritless. In *Eckhardt,* the indictment alleged four objectives of the scheme, two of which were to defraud the United States of certain intangible rights. The remaining two objectives were to defraud taxpayer-investors of, respectively, certain intangible rights and certain property rights. Ranke argues that the property rights charge was easily separable in *Eckhardt* because it involved different victims than the intangible rights charge, *i.e.,* the taxpayer-investors rather than the United States. Ranke's argument totally disregards the fact that the taxpayer-investors were alleged to have been defrauded of *both* intangible and property rights.

1980, JERRY E. RANKE and NAT D'ANGELO, defendants herein, would and did raise and cause to be raised Century's bid to Building Systems on the Unarco–Leavitt Tube Mill concrete subcontract from $970,000 to $1,160,000, *which later permitted the use of funds for* a $190,000 kickback payment to JERRY E. RANKE."

*Change 2*

Indictment: "It was a further part of the scheme that JERRY E. RANKE, defendant herein, would and did *issue a false and fraudulent extra work order* to Century in the amount of $20,840 on the Unarco–Leavitt subcontract to generate funds for a $20,840 kickback payment to JERRY E. RANKE."

Information: "It was a further part of the scheme that JERRY E. RANKE, defendant herein, would and did *issue extra work orders* to Century on the Unarco–Leavitt subcontract which later generated funds for a $20,840 kickback payment to JERRY E. RANKE."

*Change 3*

Same as Change 2, except the dollar amount was $18,939.

*Change 4*

Same as Change 2, except the dollar amount was $35,049 and the work order(s) was for the Roskin Motor Service Warehouse subcontract rather than the Unarco–Leavitt subcontract.

Ranke's argument is without merit. As to the first change, we see no meaningful distinction between the words "in order to generate funds for" and the words "which later permitted the use of funds for."[4] As to the other three changes, the deletion of the words "false and fraudulent" is of no consequence. The information clearly alleges that the monies generated by the

extra work orders were kicked back to Ranke,[5] and each challenged paragraph alleges that the issuance of extra work orders was "part of the scheme" to defraud Building Systems.[6]

### III.

 Ranke next argues that the factual basis for his plea supports only an intangible rights theory of mail fraud. This argument raises an initial question as to whether a factual basis (other than the facts alleged in the information) need be established on a plea of nolo contendere.

Rule 11(f) of the Federal Rules of Criminal Procedure provides that the district court "should not enter a judgment upon [a plea of guilty] without making such inquiry as shall satisfy it that there is a factual basis for the plea." The rationale for the rule is, in part, to ensure that there is a complete record for appeal that "mak[es] clear exactly what the defendant admits to, and whether the admissions are factually sufficient to constitute the alleged crime." *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir.1985), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). The rule, by its terms, however, does not apply to pleas of nolo contendere. The rationale for not requiring a factual basis to be established for a plea of nolo contendere is that the plea "may be accepted from a defendant who is wholly innocent but who does not wish to contest the charge." 1 C. Wright, *Federal Practice and Procedure* § 174 at 614 (2d ed. 1982) [hereinafter Wright]; *see also North Carolina v. Alford*, 400 U.S. 25, 35–36 n. 8, 91 S.Ct. 160, 166–67 n. 8, 27 L.Ed.2d 162 (1970). Despite the inapplicability of Rule 11(f) to pleas of nolo contendere, we believe that the above-stated rationale regarding

---

**4.** Ranke's argument is also undercut by the fact that the information retained the use of the word "generate" in the other paragraphs that he challenges. If the word "generate" was essential (which it was not) to show that the kickback payments came from Building Systems' monies, the government's use of that word in later paragraphs cuts against Ranke's argument.

**5.** In addition to the paragraphs quoted, the information alleged, for each respective dollar

amount, that Century issued a check in that amount to Tom Mann, Ltd., a fictitious payee, that Ranke opened a checking account in the name of Tom Mann, Ltd., and that he deposited the checks in that account, thereby converting the funds to his own use.

**6.** In Part IV below, we will discuss further Ranke's claim that the information failed to allege that the work orders were fraudulent.

guilty pleas is, for the most part, applicable to pleas of nolo contendere as well. Both a plea of guilty and a plea of nolo contendere have the ultimate effect of admitting all material facts alleged in the charge.[7] *See Lott v. United States*, 367 U.S. 421, 426, 81 S.Ct. 1563, 1566, 6 L.Ed.2d 940 (1961); *United States v. Hancock*, 604 F.2d 999, 1001 (7th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 521, 62 L.Ed.2d 420 (1979); *Larios–Mendez v. Immigration and Naturalization Service*, 597 F.2d 144, 146 (9th Cir. 1979); *United States v. American Service Corp.*, 580 F.2d 823, 825 (5th Cir.1978); *see also* Wright, § 175 at 623. Where, as here, an information is claimed to be insufficient and we must determine whether the substantive allegations are such to allow a portion of the charge to survive, having a record of the factual basis for the charge aids in that inquiry, regardless of whether the plea was guilty or nolo contendere. We therefore find the better practice is for district courts to inquire into the factual basis for pleas of nolo contendere as well as pleas of guilty by inquiring of the prosecutor as to the evidence supporting the charge.

Ranke claims that the plea agreement and the transcript of the plea hearing show that he only admitted to facts that would support an intangible rights theory of mail fraud. He correctly notes that the written plea agreement contains a specific acknowledgement that he "fail[ed] to provide his honest and loyal services to his employer." Ranke fails to note, however, that the plea agreement also states that he read and understood the charges in the information and that he "does not dispute the charges contained in Counts One and Two of the information." The fact that he did not affirmatively acknowledge a deprivation of property does not negate the fact that he did not dispute the factual allegations supporting the charge of property deprivation. More important for our purposes is the transcript of the plea hearing. Ranke claims that the basis in fact, as explained to

the judge by the prosecutor, does not support a charge of deprivation of property. Again, Ranke correctly notes that the prosecutor began by describing the scheme in terms of an intangible rights theory. However, as the colloquy continued, the prosecutor stated, without objection from Ranke:

[Building Systems] had the necessity for Mr. D'Angelo's services for constructing certain facilities. Obviously, then [Building Systems] was going to be paying Mr. D'Angelo a certain amount of money for those services. A part of those monies were diverted secretly to Mr. Ranke, who had a certain amount of decision-making authority over who would be awarded that subcontract. So that the scheme entailed is [sic] a misuse of [Building Systems] money heading back in some portion to Mr. Ranke through Mr. D'Angelo.

Given this factual basis, which is consistent with the allegations in the information, it is clear that the government charged a scheme in which part of the money paid by Building Systems to Century was secretly kicked back to Ranke.

## IV.

■ Ranke's final argument represents the heart of his appeal. Ranke argues that the government merely alleged a "*George*-type scheme" which is insufficient under *McNally*. In *United States v. George*, 477 F.2d 508 (7th Cir.1973), a pre-*McNally* case, the defendant was convicted of mail fraud based on a commercial kickback scheme that was very similar to the scheme in the instant case. In that case, the defendant Yonan, a purchasing agent for Zenith Radio Corporation, had received kickbacks from a cabinet supplier, Greensphan, who sold cabinets to Zenith. Greensphan testified that he had not inflated his prices to cover the monies paid to the defendant but had instead absorbed the cost of the kickbacks without passing them on to Zenith. The case was prosecuted on an

---

7. The difference is that the admissions made on a plea of guilty are admissions for all purposes, whereas the admissions made on a plea of nolo contendere allow only for the entry of a judg-ment of conviction in that case and they cannot be used against the defendant in subsequent litigation.

intangible rights theory, and we stated, in affirming the conviction, that "it is of no moment whether or not the kickback money actually came from Zenith." 477 F.2d at 512.

Ranke argues that, just as in *George*, Century's subcontract was not "padded"— *i.e.*, that Century absorbed the cost of the kickbacks—that Century's prices were fair and reasonable, and that Century did in fact perform the services for which Building Systems contracted. He asserts that the information failed to allege facts that would contradict this scenario. In essence, Ranke claims that Building Systems was not hurt in its pocketbook and that the information did not sufficiently allege that it was.

Since *McNally* was decided, we have not reviewed a *"George*-type" commercial kickback case and, thus, have not had the opportunity to re-examine that type of scheme. Our cases have mostly involved political corruption, *see, e.g., Ward v. United States*, 845 F.2d 1459 (7th Cir.1988); *United States v. Holzer*, 840 F.2d 1343 (7th Cir.1988); or schemes to defraud government agencies, *see, e.g., United States v. Bailey*, 859 F.2d 1265 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989); *United States v. Gimbel*, 830 F.2d 621 (7th Cir.1987); or financial schemes to deplete the assets of a corporation, *see, e.g., United States v. Cosentino*, 869 F.2d 301 (7th Cir.1989); *Bailey*, 859 F.2d 1265; or a direct fraud on a buyer by a seller, or on a client by an attorney, without the middleman necessary for a kickback scheme, *see, e.g., United States v. Cooke*, 833 F.2d 109 (7th Cir.1987) (attorney/client); *United States v. Wellman*, 830 F.2d 1453 (7th Cir.1987) (buyer/seller).[8] We now revisit *George*.

Although *George* was primarily analyzed in terms of intangible rights, and later cases have characterized it as an intangible rights case, *see, e.g., Gimbel*, 830 F.2d at 626, the case also can be viewed as involv-

ing a deprivation of property. Indeed, we stated in *George:*

Furthermore, ... [t]he evidence shows that Yonan actually defrauded Zenith.... Yonan's duty was to negotiate the best price possible for Zenith or at least to apprise Zenith that Greensphan was willing to sell his cabinets for substantially less money. Not only did Yonan secretly profit from his agency, but also he deprived Zenith of material knowledge that Greensphan would accept less profit. There was a very real and tangible harm to Zenith in losing the discount or losing the opportunity to bargain with a most relevant fact before it. As Judge Learned Hand stated in a related context:

A man is none the less cheated out of his property, when he is induced to part with it by fraud, because he gets a quid pro quo of equal value. It may be impossible to measure his loss by the gross scales available to a court, but he has suffered a wrong; he has lost his chance to bargain with the facts before him....

\* \* \* \* \* \*

... [I]t would be unrealistic to presume that Zenith would consider the fact of better than $100,000 in actual kickbacks to its buyer—over $300,000 in agreed-to-kickbacks—to be immaterial in its dealings with Greensphan. It is preposterous to claim that Zenith would have spurned such a discount if offered. 477 F.2d at 513.

The Fifth Circuit has reviewed several commercial kickback schemes and has relied in part on the above-quoted language to find violations of the mail fraud statute. *See United States v. Fagan*, 821 F.2d 1002, 1009–10 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988); *see also United States v. Rico*, 854 F.2d 710, 713–14 (5th Cir.1988); *United States v. Matt*, 838 F.2d 1356, 1358 (5th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2020, 100 L.Ed.2d 607 (1988); *United*

---

**8.** We have reviewed one bid-rigging scheme, but the facts are not analogous and, thus, the reasoning is not easily applicable to the instant case. *See Moore v. United States*, 865 F.2d 149 (7th Cir.1989).

*States v. Richerson,* 833 F.2d 1147, 1156–58 (5th Cir.1987). In *Fagan,* an employee of an offshore drilling company leased boats for the use of his employer from Fagan's boat leasing company. In exchange for receiving the drilling company's business, Fagan paid the company's employee $100 a day for each day the boats were leased. Fagan claimed that he absorbed the costs of the kickbacks. The *Fagan* court articulated three ways in which the drilling company had been deprived of property.

First, relying on *McNally*'s suggestion that a property deprivation might occur when the victim is "deprived of control over how its money [is] spent," 107 S.Ct. at 2882, the Fifth Circuit found that the drilling company was deprived of "control over its money, as it parted with its rental payments on the basis of a false premise." 821 F.2d at 1011 n. 6. The court explained that the drilling company "was fraudulently induced to part with its rental payments on the false premise (implicitly represented to it by [the employee's] nondisclosure when he had a fiduciary duty to disclose) that [the employee] was not receiving a portion of the rental payments from the lessor, Fagan, and that the latter was not accepting less than the stated rent." *Id.* at 1010.

Second, relying on *McNally*'s suggestion that a property deprivation might occur where, absent the scheme, the victim "would have paid a lower [price]" for the goods or services received, 107 S.Ct. at 2882, the Fifth Circuit found that the drilling company was deprived of "the economic value of possibly being able to rent the boats from Fagan for less, had it known he was willing to accept less." 821 F.2d at 1011 n. 6. This second articulation of property deprivation was also based on the concept, drawn from *George,* that the victim was deprived of economically material information which the employee had a duty to disclose to the employer.

Third, relying on Justice Stevens' suggestion, in his dissenting opinion in *McNally,* that constructive trust principles would support a finding of property deprivation, the Fifth Circuit found that the drilling company had a right to the kickbacks themselves. 821 F.2d at 1011 n. 6. We note that the constructive trust theory was adopted by the Sixth Circuit in *United States v. Runnels,* 833 F.2d 1183 (1987) and rejected by this circuit in *United States v. Holzer,* 840 F.2d 1343 (7th Cir. 1988).

In Ranke's case, we believe the first of the Fifth Circuit's analyses supports a finding that the information alleged a scheme to deprive Building Systems of property.[9] However, we will articulate the concept somewhat differently. The information alleged that Ranke had raised the bid on one subcontract and had issued extra work orders on both subcontracts. Ranke claims that the information failed to allege that the raised bid and extra work orders were "false." In other words, he asserts that the extra work (represented by both the raised bid and the extra work orders) was not wholly fabricated, that Century did in fact perform work. In reality, there are two possibilities. First, Century might not have performed any work on the raised portion of the bid or on the extra work orders. If that were the case, Building Systems was clearly defrauded of its money. The second possibility is that Century performed the work represented by the raised portion of the bid and the extra work orders.[10] But, in that case, too, Building Systems was defrauded. For when Building Systems paid on the raised bid and the extra work orders, it believed it was paying *only* for the work that had been performed. It was not part of the bargain that Building Systems would pay for the work *plus* pay money to Ranke.

Thus, Ranke's claim that Century's prices were not padded is of no avail. It

9. We therefore will not discuss the second analysis. (As stated, the third analysis was rejected in *Holzer.*)

10. We note that questions as to whether Century's work was satisfactory to Building Systems or whether the extra work was needed are not at issue. If so, there would of course be more possibilities.

does not matter that Century might have settled for a lower profit to "absorb" the costs of the kickbacks. We can assume that Building Systems bargained to pay Century for what one would consider its "legitimate" expenses (labor, materials, permit fees, etc.) and its profit (whatever profit Century was willing to accept). But, regardless of whether Century's price appeared to be reasonable and competitive, we cannot assume that Building Systems bargained to also pay money to its own employee, Ranke. As we stated in *George*, "it is preposterous to claim" that Building Systems would accept such a payment as part of the deal. To paraphrase the words of the Fifth Circuit, Building Systems was induced to part with its money on the basis of the false premise, implicitly represented to it by Ranke and Century, that Ranke would not receive a portion of that money.

This situation is significantly different from the situation in *McNally*. In *McNally*, the State of Kentucky paid premiums to insurance companies, which in turn paid commissions to the insurance agency that had brokered the insurance contracts, which in turn secretly shared part of those commissions with state officials. The premise of the Supreme Court's opinion was that the insurance companies were not in on the scheme, that absent the scheme the state would have paid the same premiums, that absent the scheme the insurance companies would have paid the same commissions to the insurance agency, and that the state had paid for and received exactly what it had bargained for. The transactions between the state and the insurance companies entailed no secret provisions and were not questioned. The state officials had ultimately received money as part of a separate transaction with the insurance agency. Thus, the money that ended up in the defendant state officials' hands could not be construed as having been paid to them by the state. Here, however, it was secretly a part of the transaction between Century and Building Systems that Ranke would receive part of the money paid by Building Systems to Century. That is a scheme to obtain money by means of false

pretenses and a scheme which falls within the purview of the mail fraud statute.

## V.

For the reasons stated, the district court's denial of defendant's motion to vacate his conviction and to dismiss the information is AFFIRMED.