UNITED STATES of America, Appellee,

v.

Mark L. SHYRES, Appellant.

UNITED STATES of America, Appellee,

v.

Joseph E. MARTINO, Appellant.

UNITED STATES of America, Appellee,

v.

Michael A. ORLOFF, Appellant.

Nos. 89–1039 to 89–1041.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1989.

Decided March 14, 1990.

Dean A. Strang, Milwaukee, Wis., Raymond Gruender, and Michael A. Gross, St. Louis, Mo., for appellant.

Kathianne Crane, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

BRIGHT, Senior Circuit Judge.

## I. INTRODUCTION

Joseph E. Martino, Michael A. Orloff and Mark L. Shyres (appellants) appeal their joint conviction on one count of mail fraud, 18 U.S.C. § 1341 (1988), and one count of conspiring to impede the Internal Revenue Service, 18 U.S.C. § 371 (1988). Martino and Orloff each appeal a conviction on one count of willfully making and subscribing false income tax returns. 26 U.S.C.

§ 7206(1) (1982). Shyres appeals convictions on two counts of tax evasion. 26 U.S.C. § 7201 (1982). Appellants' convictions arose out of a scheme by which Martino and Orloff as high level employees of Anheuser–Busch, Inc. directed Anheuser–Busch sales promotion work to the Bingham Group, a company owned by Shyres, in return for kickbacks of money and property. We affirm the convictions but remand to the district court[1] for appropriate compliance with technical procedures relating to sentencing required by Fed.R. Crim.P. 32(c)(3)(D).

These appellants allege the following errors on appeal: (1) insufficient evidence and incorrect jury instructions on the mail fraud count; (2) impermissible variance from the mail fraud charges set forth in the indictment; (3) incorrect response to the jury's request for clarification; (4) denial of fifth amendment confrontation rights; (5) various evidentiary rulings; (6) denial of appellants' proffered "theory of defense" instruction; (7) insufficient evidence to support Shyres' tax evasion conviction; and (8) failure in sentencing to comply with Fed.R. Crim.P. 32(c)(3)(D). Except for the failure to comply with the sentencing procedure, we reject these contentions.

## II. BACKGROUND

At the time of the conduct at issue here, Joseph E. Martino and Michael A. Orloff served as vice presidents of Anheuser–Busch, Inc. (Anheuser–Busch) and were authorized to place and authorize payment for sales promotion work. Both men previously had contracted out Anheuser–Busch sales promotion work to the Bingham Group (Bingham), a sales promotion company in the St. Louis area.

In the spring of 1981, Bingham owner Mark Shyres approached Martino and Orloff with an offer of kickbacks in return for greater amounts of sales promotion business from Anheuser–Busch. The three conspirators (Shyres, Martino and Orloff) agreed that Martino and Orloff would re-

ceive half the profits realized by Bingham on any Anheuser–Busch work directed to Bingham and that an advertising company owned by unindicted coconspirator Marvin Cotlar, the Hanley Partnership (Hanley), would perform the actual work. Accordingly, from the spring of 1981 to the summer of 1983 Martino and Orloff repeatedly placed Anheuser–Busch business with Bingham in return for kickbacks in the form of money, property and expenditures for recreation and travel.

Martino and Orloff never disclosed the kickback arrangement to their superiors at Anheuser–Busch, even though Anheuser–Busch's business ethics manual directed employees to avoid conflict of interest situations. In fact, both Martino and Orloff, in response to an annual inquiry by Anheuser–Busch, indicated that they had not engaged in any conflicts of interest.

Furthermore, neither Martino nor Orloff reported the kickbacks as income on their tax returns. Shyres also failed to report as income expenses for personal matters paid by Bingham.

Appellants' illegal activities came to light after an internal investigation at Anheuser–Busch. The Government subsequently charged appellants jointly with twelve counts of mail fraud and one count of conspiring to impede the Internal Revenue Service. In addition, the Government charged Martino and Orloff with two counts each of willfully making and subscribing false tax returns. The Government further charged Shyres with two counts of tax evasion.

In exchange for a plea of guilty to one count of conspiring to impede the Internal Revenue Service, Marvin Cotlar testified at trial as appellants' coconspirator and as a person who had been party to the transactions at issue.[2] Terrence Peterson, Hanley's chief financial officer, testified for the prosecution under a grant of immunity.

The trial judge dismissed two of the mail fraud counts before submitting the case to

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. The indictment did not charge Marvin Cotlar with any crimes.

the jury. The jury convicted all appellants of mail fraud on count one and acquitted them on the remaining nine counts of mail fraud. In addition, the jury convicted all three appellants on one count of conspiring to impede the Internal Revenue Service, convicted Martino and Orloff on one count each of willfully making and subscribing false tax returns and convicted Shyres on both counts of tax evasion.

The district court sentenced Martino and Orloff to concurrent three year sentences for each conviction and sentenced Shyres to concurrent three and one-half year sentences for each conviction. Appellants timely appealed. We relate additional relevant facts in the discussion of the issues.

## III. DISCUSSION

### A. Mail Fraud Issues

#### 1. *Property Deprivation*

To sustain a mail fraud conviction, the Government needed to prove that appellants used the mails or caused the use of the mails for the purpose of carrying out a scheme to defraud. *United States v. Leyden*, 842 F.2d 1026, 1028 (8th Cir.1988). The Government established that Martino and Orloff had obtained unauthorized kickbacks by having Shyres (through Bingham) submit invoices to Anheuser–Busch for work that at least in part had not been performed. With respect to count one (the only mail fraud count resulting in conviction), the Government demonstrated that appellants caused Anheuser–Busch to send a check through the mails in furtherance of the scheme to defraud.

Appellants challenge their mail fraud convictions, contending that the Government failed to introduce any evidence of property deprivation as required by *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), and that the jury instructions permitted the convictions without any proof of property deprivation. In support of these arguments, appellants cite a number of post-*McNally* cases. *E.g.,*

*United States v. Slay*, 858 F.2d 1310 (8th Cir.1988); *United States v. Zauber*, 857 F.2d 137 (3rd Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989); *United States v. Shelton*, 848 F.2d 1485 (10th Cir.1988); *United States v. Ochs*, 842 F.2d 515 (1st Cir.1988).

The federal mail fraud statute, 18 U.S.C. § 1341, makes it a crime to use the mails, *inter alia,* for the purpose of executing or attempting to execute "any scheme or artifice to defraud...." In *McNally*, the Supreme Court held that the mail fraud statute applies only to schemes that defraud or attempt to defraud the victim of money or property and not to schemes that defraud the victim of purely intangible rights, such as the victim's right to have its affairs conducted honestly. After *McNally*, the courts of appeals have discussed property deprivation in a variety of factual settings, resulting in a somewhat confusing web of caselaw. *Compare United States v. Richerson*, 833 F.2d 1147 (5th Cir.1987) *and United States v. Fagan*, 821 F.2d 1002 (5th Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988) *with Shelton*, 848 F.2d at 1485 *and United States v. Covino*, 837 F.2d 65 (2d Cir.1988).

We deem it unnecessary to analyze these apparently conflicting opinions inasmuch as Congress has already changed the holding of *McNally* by statute. 18 U.S.C. § 1346 (1988).[3] Nevertheless, we determine that the relevant cases support appellants' convictions, *see, e.g., Ranke v. United States*, 873 F.2d 1033, 1038–40 (7th Cir.1989); *United States v. Kerkman*, 866 F.2d 877, 879–81 (6th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 95, 107 L.Ed.2d 59 (1989), and that the cases cited by appellants in support of reversal concern only the intangible rights theory of *McNally*. *E.g., Slay*, 858 F.2d at 1313 (deprivation "of the conscientious, loyal, faithful, disinterested and unbiased services and actions of a member of the Board of Aldermen"); *Zauber*, 857 F.2d at 143 (deprivation of "honest, faith-

---

**3.** Section 1346 states: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

This new section does not apply to cases, such as this one, where the conduct occurred prior to the effective date of the statute.

ful, prudent and diligent services by its employees"); *Shelton*, 848 F.2d at 1488 (10th Cir.1988) (deprivation of "the right to have county business conducted free from corruption and undue influence").

Our review of the record discloses that the trial court properly instructed the jury and that the evidence supports the convictions. We comment initially on the jury instructions.

The trial court instructed that to convict the appellants of mail fraud the jury must find beyond a reasonable doubt that appellants "knowingly, voluntarily and intentionally devised or participated in a scheme to defraud Anheuser–Busch out of money, property, or property rights...." Trial Transcript XX, at 116 (Instruction No. 13). This portion of the jury charge unquestionably satisfies the requirements for conviction referred to in *McNally*.

■ The trial court additionally instructed the jury:

The term "property rights" as used in the mail fraud statute includes intangible as well as tangible property. Intangible property rights include any valuable right considered as a source of wealth, and include the right to exercise control over how one's money is spent.

Joint Appendix 213 (Instruction No. 14A). Appellants contend that this instruction permitted convictions without any proof that appellants deprived Anheuser–Busch of property. Thus, this case presents the issue whether the right to control spending constitutes a property right.

We determine that the right to control spending constitutes a property right. This position draws support from the Supreme Court's statement in *McNally* that there the jury instructions were flawed because the jury was not "charged that to convict it must find that the Commonwealth was deprived of control over how its money was spent." 483 U.S. at 360, 107 S.Ct. at 2881. *See also Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (property under *McNally* includes intangible property rights, such as confidential business information). In addition, decisions from other circuits sup-

port this position. *See, e.g., Ranke*, 873 F.2d at 1038–40; *Kerkman*, 866 F.2d at 879–81. Thus, deprivation of the right to control spending can serve as the basis for a mail fraud conviction. Accordingly, the jury instructions defined conduct within the scope of section 1341—the deprivation of Anheuser–Busch's right to control the spending of its own money.

■ We also conclude that the Government introduced sufficient evidence of property deprivation to satisfy *McNally*. While appellants concede that the Government introduced evidence that some of the invoices introduced at trial were false or inflated, they nevertheless assert that the check alleged in count one represented payment of a legitimate invoice. According to appellants, two legally distinct schemes existed: a scheme to share Bingham's legitimate profits and a scheme to share Bingham's illicit receipts resulting from submission to Anheuser–Busch of false or inflated invoices. Appellants argue that the mailing alleged in count one furthered only the former scheme and that the mail fraud conviction cannot stand because that scheme did not deprive Anheuser–Busch of property.

■ The Government disputes whether the check alleged in count one represented payment for services actually performed. We need not decide this issue. Even assuming *arguendo* that the check alleged in count one constituted payment of a legitimate invoice, we see no reason to separate appellants' activities into two distinct schemes. Furthermore, a legitimate mailing, one that contains no false information, can supply the requisite mailing element. *Schmuck v. United States*, — U.S. —, 109 S.Ct. 1443, 1449, 103 L.Ed.2d 734 (1989).

From the evidence presented the jury could have reasonably concluded that the mailing alleged in count one comprised part of a larger scheme to defraud Anheuser–Busch of property. Specifically, the jury could have found that pursuant to the agreement between Martino, Orloff and Shyres, Bingham presented Anheuser–

Busch both with legitimate bills for services and with false or inflated bills for services and the mailing introduced to support count one furthered that scheme. This scenario does not come within the rule announced in *McNally.* Here, the jury received instructions that loss of tangible property violates section 1341 and here appellants admit that the Government introduced evidence that some of the invoices were false or inflated.

Moreover, the jury could reasonably have concluded that appellants deprived Anheuser–Busch of intangible property, the right to control the spending of its own funds. Indeed, even if *all* the invoices represented services actually performed, the jury could have found on the evidence that appellants deprived Anheuser–Busch of the right to pay for services alone, not for services plus kickbacks. *See Ranke,* 873 F.2d at 1039–40. Similarly, the jury could have found that appellants deprived Anheuser–Busch of information relevant to its economic welfare concerning the existence of the kickback scheme. *See, e.g., United States v. Little,* 889 F.2d 1367, 1368 (5th Cir.1989); *United States v. Rico Indus., Inc.,* 854 F.2d 710, 713–14 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1529, 103 L.Ed.2d 834 (1989). In our view, the evidence shows that appellants deprived Anheuser–Busch of an intangible property right, the right to control spending.

Appellants' assertion that Anheuser–Busch relinquished control over spending by authorizing Martino and Orloff to place and authorize payment for promotional services is rejected as lacking any merit. We also reject appellants' contention that the Government failed to prove that Anheuser–Busch would have purchased the same services for less if no kickback scheme existed. The Government proved that Martino and Orloff entered into a kickback scheme in direct and knowing contravention of Anheuser–Busch's instructions. These facts comprised sufficient circumstantial evidence that Anheuser–Busch would have contracted the same services for less if it knew of the kickback scheme. *See Rico Indus.,* 854 F.2d at 713–14.

We conclude that the trial court properly instructed the jury, that the Government introduced sufficient evidence of property loss, both tangible and intangible, to support appellants' convictions and that the convictions do not offend the rule of *McNally.*

### 2. *Variance from Indictment*

■ Appellants contend that this court should reverse their mail fraud convictions on the ground that the evidence adduced at trial varied substantially and prejudicially from the theory of prosecution set forth in the indictment. Appellants assert that while the indictment alleged a scheme to submit false or inflated invoices, at trial the Government conceded that many invoices were legitimate and switched its focus to a broader scheme to share Bingham's profits.

To establish their claim, appellants must demonstrate both a legally significant variance, *United States v. McMahan,* 744 F.2d 647, 651 (8th Cir.1984), and a resultant prejudice to their cause, *United States v. Burnett,* 582 F.2d 436, 438 (8th Cir.1976).

Appellants could reasonably have anticipated the evidence presented at trial from the indictment. Count one of the indictment alleged that appellants "devised and intended to devise a scheme and artifice to obtain money and property from [Anheuser–Busch] by means of false and fraudulent pretenses, representations and promises, knowing the same would be and were false and fraudulent when made." Joint Appendix 70 (Indictment ¶ 9). Furthermore, although the indictment also alleged that some of the invoices represented promotional services not actually performed, no language limited the scheme to the submission of false or inflated invoices. Accordingly, no fatal variance is shown.

### 3. *Alleged Incorrect Answer to Jury Question*

■ Appellants argue that the trial court responded incorrectly to the following question from the jury: "What is legal definition of kickback? Can you hear us? What does it imply? Does it mean conspir-

acy?" Trial Transcript XXI, at 2. The court responded that " 'kickback' is not a legal term. It should be given its common ordinary meaning." Joint Appendix 236 (Supp. Instruction No. 1). The court also referred the jury back to the original jury instructions for the definition of "conspiracy."

Appellants show no prejudicial error here. The rule is that "[t]he response to a jury request for supplemental instructions is a matter within the sound discretion of the district court." *United States v. Skarda*, 845 F.2d 1508, 1512 (8th Cir.1988) (quoting *United States v. White*, 794 F.2d 367, 370 (8th Cir.1986)). Further, a trial court has "no obligation to define words within the ordinary understanding of the jury." *United States v. Smith*, 635 F.2d 716, 720 (8th Cir.1980).

### 4. *The Mailing Element*

The Government carried the burden of proof that appellants executed the scheme by sending something through the mails or causing something to be sent through the mails. 18 U.S.C. § 1341. Appellants argue for reversal of their mail fraud convictions on the grounds that the trial court erroneously instructed the jury on the mailing element and the Government introduced insufficient evidence of mailing. We reject each of these arguments.

■ The trial court instructed the jury as follows: "Use of the mails may be established circumstantially or by proof of business custom." Joint Appendix 215 (Instruction No. 20). Appellants contend that this instruction incorrectly equated proof of business custom with proof of mailing. Appellants properly argue that the instruction should have stated that evidence of business custom may be considered as circumstantial evidence in determining whether the Government proved the mailing element beyond a reasonable doubt. Nevertheless, we examine the jury instructions as a whole on this issue. *See United States v. Parisien*, 574 F.2d 974, 977 (8th Cir.), *cert. denied*, 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 154 (1978).

Instruction No. 13 outlined the essential elements of mail fraud, including the mailing element, and charged that "the Government must prove all of these essential elements beyond a reasonable doubt...." Trial Transcript XX, at 117. Instruction No. 18 read: "The use of the United States mails for the purpose of carrying out the scheme due to defraud is an essential element of the offense charged." *Id.* at 121. Instruction No. 17C read: "The Government must prove beyond a reasonable doubt that ... the mails used were those of the United States Post Office. Use of the so-called interoffice mails within Anheuser–Busch or private delivery services such as Federal Express is insufficient." *Id.*

These instructions properly stated the Government's burden of proof on the mailing element. On the instructions as a whole, we reject appellants' claim of error on the mailing instruction. *See United States v. Cusino*, 694 F.2d 185, 188 (9th Cir.1982), *cert. denied*, 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983); *Parisien*, 574 F.2d at 977.

■ We turn next to appellants' contention that the evidence of mailing was insufficient to support their mail fraud convictions. We review the evidence in the light most favorable to the Government, together with all favorable inferences to be drawn therefrom. *United States v. Bloom*, 482 F.2d 1162, 1163–64 (8th Cir. 1973) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). The Government introduced evidence of Anheuser–Busch's customary procedure for paying invoices. The procedure begins when an authorized employee approves an invoice and sends it to the accounting office. Unless an authorized employee writes a note on the invoice directing that the check not be mailed, a computer written check is mailed in payment of the invoice. The accounting office makes microfilms of all invoices. No notation appeared on the microfilm of the check alleged in count one.

"It is well settled that use of the mails, like most other facts, may be established by circumstantial evidence." *United*

*States v. Scott,* 668 F.2d 384, 388 (8th Cir.1981) (citing cases). Moreover, "evidence of customary office practice and procedure supports a finding of mailing." *Id.* (citing cases). "[T]he prosecution need not affirmatively disprove every conceivable alternative theory." *Bloom,* 482 F.2d at 1164 (quoting *United States v. Matzker,* 473 F.2d 408, 411 (8th Cir.1973)). Rather, the prosecution satisfies its burden by establishing the customary procedure and negating all reasonably probable alternatives.

Here, the evidence indicated only one reasonably probable alternative to mailing—that an authorized employee directed that the check not be mailed by writing a notation on the invoice. The Government negated this alternative with evidence that Anheuser–Busch keeps record of all invoices on microfilm and that no notation appeared on the films of the invoice in question. We distinguish *United States v. Burks,* 867 F.2d 795, 797–98 (3d Cir.1989) (mere probability of mailing not enough to sustain conviction), upon which appellants rely. There exists sufficient evidence to support a jury finding that appellants caused the check to be mailed.

### B. Evidentiary Issues

#### 1. *Confrontation Clause*

Appellants argue that the trial court denied them their sixth amendment right to effectively confront the Government's witnesses. Specifically, appellants contend that the trial court unduly limited their cross-examination of three witnesses: Hanley's chief financial officer, Terrence Peterson; a revenue agent for the Internal Revenue Service, Steven Grass; and deputy general counsel of Anheuser–Busch, Richard Schwartz. We disagree.

Trial judges possess broad discretion to limit cross-examination based on concerns of harassment, prejudice, confusion of the issues, or repetitive or marginally relevant interrogation. *United States v. Klauer,* 856 F.2d 1147, 1149 (8th Cir.1988). A trial court's decision to limit cross-examination will not be reversed without a showing of abuse of discretion and prejudice to the defendant. *Id.* Appellants have demonstrated neither abuse of discretion nor prejudice.

■ With respect to chief financial officer Peterson, appellants contend that the trial court unduly restricted both the scope and length of cross-examination. Our review of the record reveals, however, that the trial court acted primarily to preclude repetitive, irrelevant and harassing cross-examination. Indeed, following the Government's three-hour direct examination, the trial court allowed counsel for appellants nearly a day of uninterrupted cross-examination. Appellants therefore received ample opportunity to pursue legitimate areas of inquiry. As the Supreme Court has observed, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original)).

■ Appellants contend that the trial court erred by restricting cross-examination of Schwartz, the deputy general counsel of Anheuser–Busch, about communications with his superiors regarding Anheuser–Busch's internal investigation of the kickback scheme. According to appellants, even if these communications were protected by the attorney-client privilege, disclosure of communications relating to the internal investigation waived the privilege.

■ As an initial matter, we note that the attorney-client privilege clearly applies to communications made to corporate counsel in the course of conducting an internal investigation. *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). We need not decide whether disclosure of some communications between Schwartz and his superiors waived the attorney-client privilege as to all such communications, however, because any error was harmless beyond a reasonable doubt under the standards announced

in *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438. Schwartz was not a key witness and extensive cross-examination was otherwise permitted. Furthermore, appellants have not shown how cross-examination about communications between Schwartz and his supervisors would have discredited Schwartz' testimony. The error, if any, was harmless beyond a reasonable doubt. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438; *United States v. Gregory*, 808 F.2d 679, 681 (8th Cir.), *cert. denied*, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987).

■ Appellants further contend that the trial court violated their confrontation clause rights and the Federal Rules of Evidence by restricting cross-examination of revenue agent Grass. Grass testified for the Government about his computations of unreported income based on a summary of items already in evidence. The trial court permitted extensive cross-examination of Grass but sustained objections to questions about whether Grass in his testimony had considered psychiatric records and grand jury testimony, matters not in evidence at trial. Appellants argue that the accuracy of Grass' conclusions depended on the truthfulness of Cotlar and Peterson, that the psychiatric records and grand jury testimony show that Cotlar and Peterson were untruthful and that the trial court should have permitted questions about whether Grass considered these materials in reaching his conclusions. Appellants cite no authority for requiring cross-examination about matters outside the evidence that a summary/expert witness did not consider. We reject appellants' contention as meritless.

### 2. *Failure to Disclose Presentence Report*

■ At trial, appellants moved for production of Marvin Cotlar's statements to his probation officer contained in his presentence report. The probation officer prepared the report in connection with Cotlar's plea of guilty to one count of conspiring to impede the Internal Revenue Service. Appellants sought Cotlar's statement for use in impeaching his credibility and now con-

tend that their due process and confrontation clause rights were violated by the district court's failure to order production of the report.

We addressed this issue in *United States v. McKnight*, 771 F.2d 388, 390 (8th Cir. 1985) (citations omitted), *cert. denied*, 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986):

The circumstances under which presentence investigation reports are to be made, their content, and the circumstances under which they may be disclosed, are governed by Rule 32 of the Federal Rules of Criminal Procedure. The Rule is silent regarding the disclosure of such reports to third persons. In order to ensure the free flow of information so that a district court has as complete a set of facts as is possible for fashioning an appropriate sentence, courts have held that presentence reports are not public and should not be disclosed to third persons absent a demonstration that disclosure is required to meet the ends of justice. The American Bar Association also recommends that presentence reports be maintained as confidential documents, limiting their disclosure, as to third parties, to persons or agencies dealing with defendant's rehabilitation.

Appellants present no compelling or even substantial need for Cotlar's presentence report. Notwithstanding the denial of disclosure, the jury heard testimony that Cotlar had previously been convicted of a felony and that he testified pursuant to a plea agreement. In addition, appellants were permitted to introduce psychiatric testimony that Cotlar possessed the character trait of untruthfulness.

We have made an *in camera* review of Cotlar's presentence report. The report merely recites the basic facts of this case related not by Cotlar, but by his attorney. We are satisfied that nondisclosure of the report did not violate any of appellants' rights.

### 3. *Other Evidentiary Issues*

■ We review evidentiary rulings only for abuse of discretion. *United States v.*

*Ball,* 868 F.2d 984, 987 (8th Cir.1989). The trial court acted well within its discretion with respect to the evidentiary rulings in this case and appellants' other evidentiary claims therefore require little discussion. Appellants contend that the trial court failed to review *in camera* all the notes kept by Government agents of interviews with Cotlar and Peterson as required by the Jencks Act,[4] 18 U.S.C. § 3500 (1988). The Jencks Act requires production of any written statement signed by the witness "or otherwise adopted or approved by him...." *Id.* § 3500(e)(1). The Act also requires production of any "substantially verbatim recital," of the witness' story. *Id.* § 3500(e)(2). *See also Palermo v. United States,* 360 U.S. 343, 352, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287 (1959). But the Act does not require disclosure of memoranda or general notes of witness interviews, as requested here.

■ We next reject appellants' contention that the trial court erred in not requiring disclosure of an internal investigative report prepared by counsel for Anheuser–Busch for the purpose of rendering legal advice. The communications contained in this report were protected by the attorney-client privilege, which Anheuser–Busch did not waive by voluntarily disclosing the report to the Government in conjunction with a grand jury investigation. *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 611 (8th Cir.1977).

■ We also reject appellants' argument that the trial court abused its discretion by allowing Peterson to read from a hearsay document not admitted into evidence. This argument relates to an eleven-page document which Peterson and Cotlar prepared during and in furtherance of the conspiracy. After determining that Peterson could not recall from memory the information in the ledger, the court properly permitted him to refresh his recollection by referring to the document. *Phillips v. Wyrick,* 558 F.2d 489, 496–97 (8th Cir.1977), *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978). Moreover, the document was admissible as the statement of a coconspirator under Fed.R.Evid. 801(d)(2)(E).

■ We further reject appellants' argument that one of the documents admitted into evidence at trial contained inadmissible hearsay within hearsay, Fed.R.Evid. 805, because it summarized Bingham invoices.[5] The document clearly qualified as the statement of a coconspirator made during the course of and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E). Moreover, the invoices were presumably prepared during the regular course of business and therefore admissible under the business records exception to the hearsay rule. Fed.R.Evid. 803(6).

C. Other Issues

1. *Venue for False Tax Return Counts*

■ Martino and Orloff argue that their convictions for filing false tax returns in violation of 26 U.S.C. § 7206(1) should be reversed because the Government failed to prove that venue lay in the Eastern District of Missouri and the district court failed to have the jury find venue.

Ordinarily, venue for a section 7206(1) violation lies in any district in which a false tax return was made and subscribed or filed. *United States v. Nell,* 570 F.2d 1251, 1256 (5th Cir.1978). In addition, because the continuing offense statute, 18 U.S.C. § 3237(a) (1988), applies to section 7206(1), venue also lies "in any district in which such offense was begun, continued, or completed." In this case, however, the trial court instructed the jury that a section 7206(1) violation consists of "willfully *signing* a false income tax return," Trial Tran-

---

4. The Jencks Act has been incorporated into the Federal Rules of Criminal Procedure as Rule 26.2.

5. In a related argument, appellants contend that the document constituted a summary under Fed.R.Evid. 1006 and that the Government failed to make available the underlying invoices as required. We doubt that the document constituted a summary, inasmuch as Cotlar prepared it in furtherance of the conspiracy, not in preparation for trial. Nevertheless, assuming *arguendo* that the document was a summary, the record shows that the Government made the underlying invoices available to appellants.

script XX, at 127 (emphasis added), and thereby circumscribed venue to the place of signing. *Cf. United States v. Tapio*, 634 F.2d 1092, 1094 (8th Cir.1980) (although specific intent not required by statute, jury instruction established it as the law of the case).

■ Whether Martino and Orloff signed their returns in the Eastern District of Missouri was a question of fact for the jury. *United States v. Black Cloud*, 590 F.2d 270, 272 (8th Cir.1979). Nevertheless, as we said in *United States v. Moeckly*, 769 F.2d 453, 461 (8th Cir.1985), *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986), "proof of venue may be so clear ... that the failure to instruct on the issue is not reversible error." In this case, the Government introduced strong circumstantial evidence that Martino and Orloff signed their tax returns in the Eastern District of Missouri, including uncontradicted evidence that both Martino and Orloff lived and worked in the Eastern District of Missouri, that their tax forms had been sent to them at their homes and that their returns were prepared in the Eastern District of Missouri. Therefore, while the jury should have been given an opportunity to make a finding of proper venue, any error from denial of jury instructions on this issue is harmless. *See Moeckly*, 769 F.2d at 462.

### 2. *Theory of Defense Instructions*

■ We reject appellants' contention that the trial court erred in rejecting their theory of defense instructions. These proposed instructions were simply verbose recitations of appellants' versions of the facts containing no legal theory of defense except that the jury had to find appellants guilty beyond a reasonable doubt. The Government's burden of proof, however, was adequately covered by other instructions. Moreover, the trial court submitted several other instructions proposed by appellants, including good faith instructions on the mail fraud and tax offenses. The trial court properly instructed the jury and was not obligated to accept appellants' theory of defense instructions. *See United*

*States v. Lisko*, 747 F.2d 1234, 1237–38 (8th Cir.1984).

### 3. *Tax Evasion Conviction*

Shyres argues that his tax evasion convictions, which were based on the testimony of Cotlar and Peterson, should be reversed because those witnesses were unworthy of credence. The jury passes on credibility, not this court. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Hudson*, 717 F.2d 1211, 1213 (8th Cir.1983). While there may be some outer limit to this principle, this case does not approach it. We reject this argument.

### D. Sentencing

■ Finally, appellants contend that the district court failed to follow the procedures required by Fed.R.Crim.P. 32(c)(3)(D). Specifically, appellants argue that the district court failed to make a finding of total victim loss, an alleged factual inaccuracy in the presentence report, or a determination that the amount of victim loss was not being taken into account at sentencing.

Federal Rule of Criminal Procedure 32(c)(3)(D) requires a sentencing court to either resolve alleged factual inaccuracies in a presentence report by making a specific finding or to explicitly determine that no such finding is necessary because the controverted matter will not be taken into account at sentencing. The Rule also requires the court to append a copy of the finding or determination to the presentence report. Compliance with the sentencing procedure mandated by Rule 32(c)(3)(D) is mandatory "because of the great reliance placed on presentence investigation reports by courts and the Bureau of Prisons and the Parole Commission." *United States v. Garbett*, 867 F.2d 1132, 1136 (8th Cir.1989) (citing *Poor Thunder v. United States*, 810 F.2d 817, 824 (8th Cir.1987)).

The presentence report in this case stated that total victim loss amounted to $200,000. Each of the appellants contested this figure prior to sentencing. The court sentenced the appellants individually, but all at

the same hearing. The court imposed restitution in the amount of $30,000 with respect to each of the appellants. With respect to Orloff alone, however, the court stated that "any matters to which no finding is made above, matters controverted are not being taken into account of sentencing. Therefore, no finding as to their accuracy is necessary." Sentencing Transcript at 24.

After the filing of the notice of appeal in this case, appellants requested the district court to amend the presentence reports to adjust their offense category downward based upon a finding of restitution in the amount of $30,000. The court issued an order noting that Fed.R.Crim.P. 32(c)(3)(D) does not provide for amendment of a presentence report, but reaffirmed its finding of restitution in the amount of $30,000 and directed that a copy of the order be attached to the presentence reports and forwarded to the Bureau of Prisons. Appellants subsequently moved for a determination of total victim loss, which the court construed as a request for reconsideration of its previous order and denied.

The trial court's statements at the sentencing hearing strongly suggest that the court did not consider total victim loss in sentencing the appellants. The court's order directing that a copy of the restitution order be sent to prison authorities reinforces this conclusion and indicates an attempt to comply with Fed.R.Crim.P. 32(c)(3)(D). Nevertheless, the Rule requires an explicit determination that total victim loss was not considered. The Rule also requires that such determination be appended to the presentence report. Therefore, we will remand for compliance with Fed.R.Crim.P. 32(c)(3)(D).

IV. CONCLUSION

The convictions are affirmed in all respects and we remand for compliance with Fed.R.Crim.P. 32(c)(3)(D). If the district court did not consider the total victim loss figure from the presentence report in sentencing appellants, then the court need only express this determination as to each appellant in writing, append copies to the presentence reports and forward the information to the appropriate Bureau of Prison and Parole Commission authorities. If the court considered total victim loss in sentencing, then a further sentencing hearing may be necessary, unless the court can indicate its finding of total victim loss from the present record.[6]

---

**6.** Thus, if the court intended that the order of $30,000 restitution serve as a finding of total victim loss, the court may indicate this in writing, append copies to the presentence reports and forward the information to the appropriate authorities.