U.S. v. Billmyer                          CR-94-29-JD    02/03/95
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


United States of America

        v.                            Criminal Nos. 94-29-01, 03, 04-JD

John W. Billmyer,
Stanley J. Cardiges, and
Dennis M. Josleyn


                              O R D E R


        John W. Billmyer, Stanley James Cardiges and Dennis R.

Josleyn were indicted pursuant to a second superseding

indictment.  Count I charges Cardiges and Josleyn with a

violation of the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1962(c); Count II charges Billmyer,

Cardiges and Josleyn with conspiracy to defraud American Honda,

certain Honda dealers, the United States, the United States

Treasury and the Internal Revenue Service in violation of 18

U.S.C. § 371; Count III charges Cardiges and Josleyn with

conspiracy to defraud American Honda and certain Honda dealers in

violation of 18 U.S.C. § 317; Count IV charges Cardiges and

Josleyn with mail fraud in violation of 18 U.S.C. § 1341; and

Count V charges Cardiges with witness tampering in violation of

18 U.S.C. § 1512(b)(3).  Currently before the court are defendant

Cardiges's motion to dismiss Count II and III of the indictment

(document no. 146); defendant Billmyer's renewed motion to

dismiss and alternative motion for severance (document no. 150) and defendant Josleyn's motion to dismiss for misjoinder (document no 154). The court has also agreed to reconsider defendant Josleyn's original "Motion to Quash" (document no. 86) in light of the new indictment. See document no. 153.

## Discussion

The grand jury returned a second superseding indictment January 19, 1995, against the defendants, all former employees of the American Honda Company. The indictment charges that the defendants participated in a scheme to defraud American Honda and others by accepting "kickbacks" from dealers in exchange for dealership awards and favorable car allocations. The defendants have filed motions on several grounds seeking to dismiss Counts II and III of the indictment.

## A. Objections to Count II

Defendant Cardiges argues that Count II fails to charge a single conspiracy but rather, on its face, charges at least two separate conspiracies. Motion to Dismiss Counts II and III at ¶ 3, 4; Cardiges's Incorporated Motion to Dismiss at 2. According to Cardiges, Count II should be dismissed because it fails to allege any single unifying plan or scheme, fails to allege an

2

agreement or mutual understanding between the defendants, and is lacking in the requisite specificity necessary for Cardiges to prepare an effective defense. Cardiges's Incorporated Motion to Dismiss at 2, 5, 8. In effect, Cardiges argues that Count II is defective because it alleges an improper "`wheel' conspiracy," contending that although the indictment may charge a series of individual conspiracies, the government will not be able to show an overall, connecting conspiracy, the "rim" of the wheel, as required under Kotteakos v. United States, 328 U.S. 750 (1946). See id. at 6-7, 10. Defendant Billmyer also objects to Count II on grounds that it charges multiple conspiracies. See Consolidated Brief of John Billmyer at 1-14. Defendant Josleyn has joined in Cardiges's motions. See document no. 167.

An indictment is constitutionally sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charge against which he must defend, and enables the defendant to plea without fear of future prosecutions for the same offense. United States v. Yefsky, 994 F.2d 885, 893 (1st Cir. 1993); United States v. Sedlak, 720 F.2d 715, 719 (1st Cir. 1983) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)), cert. denied, 465 U.S. 1037 (1984); see Fed. R. Crim. P. 7(c)(1). The defendant is entitled to a statement of facts and circumstances explaining the specific offence with which he is

3

charged. <u>Hamling</u>, 418 U.S. at 117-118 (citing <u>United States v. Hess</u>, 124 U.S. 483, 487 (1888)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as `those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence [sic] intended to be punished.'" <u>Id.</u> (quoting <u>United States v. Carll</u>, 105 U.S. 611, 612 (1882)). "An indictment for conspiracy, however, need not allege the predicate offense with the same precision as the substantive count." <u>Yefsky</u>, 994 F.2d at 893 (citing <u>Wong Tai v. United States</u>, 273 U.S. 77, 81 (1927)).

Count II of the indictment charges a violation of 18 U.S.C. § 371, which provides in part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The essence of the charge is that the defendants engaged in a scheme to defraud American Honda, the United States, the United States Department of Treasury and the Internal Revenue Service. The charge is brought under the ambit of § 371 through an alleged

4

use of the mails in furtherance of the scheme.  See Second
Superseding Indictment, ¶ 86.[1]

The indictment lists the goals and the manner and means of
the conspiracy.  The indictment continues on to set forth overt
acts in furtherance of the conspiracy, including a Honda dealer
from Maryland causing "approximately $9,500 in Neiman-Marcus gift
certificates for **BILLMYER** and **CARDIGES** to be delivered by the
United States Postal Service to the home of **CARDIGES,** in return
for favorable treatment from American Honda."  Id. at ¶ 96(g)

The indictment is sufficient.  Under the applicable
standards, it fairly informs the defendants of the charge against

---

[1]Paragraph 86 states:

Beginning in or about 1979 and continuing
thereafter until or about June 1992, in the District of
New Hampshire and elsewhere,

**JOHN W. BILLMYER**
**STANLEY JAMES CARDIGES and**
**DENNIS R. JOSLEYN**

did knowingly and willfully conspire with and agree
among each other, and with others known and unknown to
the Grand Jury, to engage in a scheme to defraud
American Honda, the United States, the United States
Department of Treasury and the Internal Revenue Service
in violation of Title 18, United States Code, Section
1341, as more particularly set forth in paragraphs 87
to 96 of this Indictment.

Section 1341 of Title 18 is the mail fraud statute.  See 18
U.S.C. § 1341.

5

them so that they may plead an acquittal or conviction in bar of future prosecutions. Count II cannot be dismissed for lack of specificity, although it certainly cannot be regarded as a model of draftsmanship.

Nonetheless, all three defendants maintain that Count II should be dismissed because it fails to allege a unifying plan or scheme and therefore charges multiple conspiracies.

An indictment that is duplicitous on its face is defective because it "carries the potential harm that a defendant will be unable to determine on a verdict form if he has been found guilty of all those conspiracies, or some combination of a few, or only one." United States v. Alexander, 736 F. Supp. 968, 995 (D. Minn. 1990) (citing Kotteakos, 328 U.S. 750). To demonstrate the duplicitous nature of the indictment, Cardiges outlines what he claims are the various separate conspiracies alleged in Count II. See Cardiges's Incorporated Motion to Dismiss at 2-4, 8-9. He argues that Count II of the indictment describes one scheme wherein all three defendants received payments from individuals seeking Honda and Acura dealerships and a second separate scheme wherein the defendants received gifts in violation of company policy. Id. at 2-3; Motion to Dismiss Counts II and III, ¶ 4. In response the government proffers its explanation of how the allegations support a single conspiracy under First Circuit law.

6

See Government's Incorporated Objection to Motion to Dismiss Count II at 5-6 (citing United States v. Boylan, 898 F.2d 230, 242 (1st Cir.), cert. denied, 498 U.S. 849 (1990)). The government notes that

> [t]he Superseding Indictment sets forth the following allegations . . . . Each of the defendants in the instant case worked for the Auto Field sales Division of American Honda Motor Company. Each defendant used similar means to obtain kickbacks, in direct contravention of their employer's policy, from automobile dealers that were financially vulnerable to the defendants' sales management decisions. The payers of cash and other items of value were all dealers or prospective dealers of American Honda automobiles.

Id. at 6. The government contends that "[a] jury may reasonably infer from these facts, as well as other evidence the government will submit, that the defendants were part of a single conspiracy to defraud American Honda and the United States." Id.

"[Q]uestions anent the number and structure of conspiracies present matters of fact suitable for resolution by a jury." United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993), cert. denied, 114 S. Ct. 2714 (1994); see United States v. David, 940 F.2d 722, 732 (1st Cir.), cert. denied, 112 S.Ct. 605 (1991), cert. denied, 112 S. Ct. 908 (1992), cert. denied, 112 S. Ct. 1298 (1992), cert. denied, 112 S. Ct. 2301 (1992). Opposing interpretations of the allegations will need to be resolved at trial and therefore it is not appropriate for the court to address the nature of the conspiracy charge in response to a

7

pretrial motion.  "As is clear from much of the precedent on this question of duplicitously pleaded conspiracies, the question most often is incapable of full resolution until after the jury verdict when the jury has been instructed regarding the singular objective requirement and has decided whether or not it has been sustained."  Alexander, 736 F. Supp. at 995. (citing United States v. Bledsoe, 674 F.2d 647 (8th Cir. 1982); United States v. Coward, 630 F.2d 299 (4th Cir. 1980)).

Cardiges also asserts that the indictment should be dismissed because it fails to allege an agreement or mutual understanding between the defendants.  Cardiges argues that the indictment merely contains "allegations of multiple acts and agreements all lumped together into a single charge."  Cardiges's Incorporated Motion to Dismiss at 10.  The government responds that the indictment alleges many acts from which a single agreement may be inferred.  Government's Incorporated Objection to Motion to Dismiss at 8 (referencing allegations that Billmyer and Cardiges received payments from dealers in exchange for favorable treatment; that Billmyer and Cardiges received gift certificates from dealers in exchange for favorable treatment; that Josleyn and Cardiges received payments from dealers in exchange for favorable treatment from Josleyn).

An indictment must allege the essential elements of the offense charged.  See Wong Tai, 273 U.S. at 80-81 (1927).  Thus, the indictment must charge a conspiracy (an agreement and some object), the defendants' knowledge of it, and their voluntary participation in it.  United States v. David, 940 F.2d 722, 735 (1st Cir. 1991); United States v. Latham, 874 U.S. F.2d 852, 863 (1st Cir. 1989).  A single conspiracy is alleged so long as the indictment charges the defendants with agreeing to participate in one or more criminal ventures.  See United States v. Alessi, 638 F.2d 466, 473 (2d Cir. 1980).  The agreement, express or tacit, may be shown through the actions or the words of the defendants. United States v. Glenn, 828 F.2d 855, 858 (1st Cir. 1987).  The conspiracy is the crime, no matter how diverse its objects. Braverman v. United States, 317 U.S. 49, 54 (1942).  In a mail fraud conspiracy, the underlying fraud also must be specified in the applicable count.  Yefsky, 994 F.2d at 893.

In determining the sufficiency of the indictment, the court may not look to alleged insufficiencies in the evidence, but rather may look only to whether the indictment properly alleges the necessary elements.  See United States v. Habicht, 766 F. Supp. 22, 25-27 (D. Mass. 1991), modified sub nom., United States v. Melvin, 27 F.3d 710 (1st Cir. 1994).  By charging the defendants with an agreement to violate 18 U.S.C. § 371, Count II

9

alleges a single conspiracy with multiple objects. The goal of the conspiracy was to defraud American Honda of tangible and intangible property and salary and benefit, and to enrich themselves and others. The nature of the scheme is set forth in eight separate paragraphs. Nineteen overt acts in furtherance of the conspiracy are listed.

As the court has previously stated, whether the evidence adduced at trial supports the conspiracy alleged is a question that must be resolved at trial. It is not proper for the court to consider objections which go to the sufficiency of the evidence at this stage in the proceeding. See id. (citing Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 & n.16 (1952) ("[T]he defendant['s] thesis hinges on an erroneous equation of what the Government must charge in the indictment with what the Government must prove at trial. The allegations of an indictment are presumed to be true for the purposes of assessing sufficiency, and inquiry into whether the Government can prove its case is inappropriate at this stage.")). Therefore, Count II cannot be dismissed for failure to state a common plan or scheme.

Defendant Billmyer raises several additional challenges to Count II. First, he argues that once broken down into individual conspiracies, the charged conspiracies involving him are barred

10

by the statute of limitations. Because the court rejects the defendants' assertion that Count II must be dismissed due to the existence of multiple conspiracies, it must also reject Billmyer's claim that the statute of limitations requires the court to dismiss Count II as to him. It is only necessary that the indictment charge one overt act in furtherance of the conspiracy occurring within the statute of limitations. See Grunewald v. United States, 353 U.S. 391, 396-97 (1957). It is not necessary for the government to allege that each named defendant committed an overt act within the applicable period. See id. The indictment alleges several overt acts occurring within the statute of limitations, in this case five years. See Second Superseding Indictment, ¶ 96(j), (k), (r), (s).

Second, Billmyer argues that he withdrew from the conspiracy more than five years prior to the indictment and therefore prosecution is barred by the statute of limitations. Billmyer's Incorporated Motion to Dismiss at 10. Withdrawal is an affirmative defense. Whether or not Billmyer withdrew is a question of fact that must be decided by the jury. See United States v. Young & Rubicam, Inc., 741 F. Supp. 334, 345 (D. Conn. 1990).

Third, Billmyer argues that the McNally doctrine requires that Count II be dismissed because no victim was deprived of any

11

property right or interest. Billmyer's Incorporated Motion to Dismiss at 15.

In McNally, the Supreme Court attempted to clarify the reach of the mail and wire fraud statutes. The indictment at issue charged that the defendants devised a scheme to defraud the citizens and government of Kentucky of their right to have the Commonwealth's affairs conducted honestly. The court held that the mail fraud statute does not reach "schemes to defraud citizens of their intangible rights to honest and impartial government.'" Carpenter v. United States, 484 U.S. 19, 25 (1987) (quoting McNally, 483 U.S. at 355). The court emphasized that the mail fraud statute is "limited in scope to the protection of property rights." Id. (quoting McNally, 483 U.S. at 360).

Following the Supreme Court's decision in McNally, Congress amended the statute so that the term scheme or artifice to defraud would include "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. However, the amendment cannot be applied retroactively and alleged conduct occurring prior to November 18, 1988, must be reviewed under the standard articulated in McNally. See McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 791 (1st Cir.), cert. denied, 498 U.S. 992 (1990).

The First Circuit has held that

> [a]n indictment may charge a crime by claiming that the defendant violated a statute in several different ways. See United States v. Miller, 471 U.S. 130, 134, 105 S. Ct. 1811, 1814, 85 L.Ed.2d 99 (1985) (indictment properly charged violations of § 1341 by setting forth "a number of ways in which the acts alleged constituted violations"). A jury need not believe that the defendant did everything the indictment charges; it may convict if it believes he did some of the things the indictment charges and if those things, by themselves, amount to a violation of the statute. Id. (conviction proper because the facts proved at trial conformed to "one of the theories of the offense" contained in the indictment).

United States v. Doherty, 867 F.2d 47, 55 (1st Cir.), cert. denied, 492 U.S. 918 (1989). Because "[a] part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as a `useless averment' that `may be ignored,'" the fact that an indictment charges a violation of the mail fraud statute by depriving a victim of a non-property right does not automatically invalidate the indictment. Id. (quoting Miller, 471 U.S. at 134; Ford v. United States, 273 U.S. 593 (1927)). Only that part of the indictment is considered invalid. Id. So long as the remaining portions of the indictment describe the offense with sufficient clarity to show a violation of law and permit the defendant to plead without fear of double jeopardy, the indictment is sufficient. Id.

The indictment at issue does not rely on any impairment of the right to honest government. Instead, it charges that the

13

defendants devised a scheme to "defraud American Honda of valuable tangible and intangible property for the benefit of the conspirators and others," "to defraud American Honda of the salary and other employment benefits paid by American Honda to BILLMYER, CARDIGES, JOSLEYN and other American Honda employees who joined the conspiracy," and to enrich the conspirators and others "through the receipt of substantial money payments" from persons seeking to do business with American Honda. Second Superseding Indictment, ¶ 87(a), (b), (c). The indictment alleges that the defendants received kickback payments in return for providing Letters of Intent to dealers in violation of Honda policy; converted, or stole American Honda property (contract rights); sold converted property for their own gain and to the detriment of American Honda and its shareholders; and solicited and accepted money and gifts in violation of American Honda's conflict of interest policy, thereby defrauding American Honda of its right to the salary paid to the defendants. Id. at ¶¶ 89-94.

In its order dated January 5, 1995, (document no. 131), the court considered similar allegations contained in Count I of the indictment and ruled that American Honda was deprived of its right to determine the ultimate destination of the Letters of Intent and that this right is not too ephemeral to constitute a violation of the mail fraud statute. The court noted that, "[i]n

14

its broadest sense, a `property' interest resides in the holder of any of the elements comprising the `bundle of rights' essential to the use or disposition of tangible property or to the exercise or alienation of an intangible right." United States v. Bucuvalas, 970 F.2d 937, 945 (1st Cir. 1992) ("The concept of `property' in the law is extremely broad and abstract. The legal definition of `property' most often refers not to a particular object, but rather to the . . . bundle of rights recognized in that object . . . [including] the rights to possess, to use, to exclude, to profit, and to dispose."), cert. denied, 113 S. Ct. 1382 (1993); Brotherton v. Cleveland, 923 F.2d 477, 481 (6th Cir. 1991).

> Ownership of a tangible object . . . includes the right to retain that object and to refuse to transfer it to others. The right persists even if others are willing to pay a fair market value for the object. Were it otherwise, everyone would have a private right of condemnation over the property of others; everyone could simply take another's property at will as long as fair market value was paid.[2]

United States v. Bruchhausen, 977 F.2d 464, 469 (9th Cir. 1992) (Fernandez, J., concurring). "The strictures an owner puts on his willingness to sell an item are not mere ephemera." Id. An owner has the right to select to whom he will sell and "[f]raud may be predicated upon misrepresentations as to the identity of

_____

[2]This principal resonates with equal force when applied to intangible property.

the purchaser."  Id. (citing Walker v. Galt, 171 F.2d 613, 614 (5th Cir. 1948)); see 37 Am. Jur. 2d Fraud and Deceit § 284 (1968) ("If one obtains from an owner, by false representation of a fact which he deems material, property that he would not otherwise have parted with . . . there is such an injury as will be redressed by equity.").  The property requirement of the mail fraud statute has been deemed satisfied where the victim lost control over property without suffering any pecuniary loss.  See Ranke v. United States, 873 F.2d 1033, 1040 (7th Cir. 1989) (general contractor defrauded of its property because it was induced to part with property on the basis of false premise, thereby losing control over its disposition).

Count II states that the defendants, by accepting kickbacks in return for Letters of Intent, converted, or stole the valuable contract rights conferred by the Letters of Intent, and sold the converted property for their own gain to the detriment of American Honda and its shareholders and in violation of its conflict of interest policy.  The indictment adequately alleges that American Honda was defrauded of its right to award the Letters of Intent in conformity with the "strictures" it placed on its willingness to make its awards.  The "defendants' conduct deprived [American Honda] of the right to define the terms for the sale of its property . . . .  The fact that [American Honda]

16

never suffered -- and that defendants never intended it -- any pecuniary harm does not make the fraud statutes inapplicable." United States v. Schwartz, 924 F.2d 410, 421 (2d. Cir. 1991). Accordingly, the government has advanced a viable theory of conspiracy to commit fraud.

However, Billmyer has also raised an objection to the references to salary payments contained in Count II. Billmyer argues that charges that the defendant defrauded an employer of salary paid to him have been held not to constitute a sufficient property loss for purposes of the mail fraud statute. The government responds that the allegations in the indictment are valid under McNally and support the indictment. Because the court must excise that portion of the indictment relating to salary payment if fraudulent obtainment of salary does not constitute a deprivation of property under McNally, the court also considers this aspect of Billmyer's McNally objection.

Billmyer bases his objection on the First Circuit's opinion in United States v. Ochs, 842 F.2d 515 (1st Cir. 1988). In Ochs, the First Circuit criticized a Fifth Circuit opinion, United States v. Richerson, which the Ochs court interpreted as holding that "whenever an employee conceals material information from his employer, he causes a property harm to his employer because the employer does not receive the services for which he paid." 842

17

F.2d at 523, 525-527 (1st Cir. 1988) (citing <u>United States v.</u> <u>Richerson</u>, 833 F.2d 1147, 1157 (5th Cir. 1987)).  Billmyer argues that the allegations concerning salary payments contained in the indictment raise identical issues to those considered by the <u>Richerson</u> Court and held insufficient to constitute property loss by the First Circuit.

In <u>Ochs</u>, the First Circuit commented upon several decisions that followed Justice Stevens' dissent in <u>McNally</u>.  Justice Stevens stated in a footnote that

> [w]hen a person is being paid a salary for his loyal services, any breach of that loyalty would appear to carry with it some loss of money to the employer -- who is not getting what he paid for.  Additionally, "[i]f an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to liability to deliver it, its value or its proceeds to the principal."  This duty may fulfill the Court's "money or property" requirement in most kickback schemes.

<u>McNally v. United States</u>, 483 U.S. 350, 377 n.10 (1987) (Stevens, J., dissenting) (quoting Restatement (Second) of Agency, § 403 (1958)).  The principle that the failure of an agent to provide to the principal anything obtained in violation of a duty of loyalty may fulfill the "money or property" requirement in most kickback schemes came to be known as the "secret profits theory."  <u>See</u> <u>Ochs</u>, 842 F.2d at 525.

In <u>Ochs</u>, the First Circuit noted that several other circuits had adopted Justice Stevens' footnote, using it as a basis to

18

hold, for example, that an agent's failure to turn over bribe payments to a principal constitutes a property loss for purposes of McNally, see United States v. Runnels, 833 F.2d 1183, 1186-92 (6th Cir. 1987), rev'd, en banc, 877 F.2d 481 (6th Cir. 1989), and that the concealment of material information from a principal is a sufficient property loss to satisfy the mail fraud statute. Richerson, 833 F.2d at 1157. The court, citing to Runnels and Richerson, concluded that Justice Stevens' footnote did not provide a proper basis for determining what is a property loss as it appeared inconsistent with the majority opinion. Id. at 527.

The Ochs court never directly considered whether a disloyal employee's receipt of salary constitutes a loss of the employer's property. See generally, id. The circumstances considered in Ochs involved the defendants' obtaining building permits from the city of Boston for a fraudulently low fee. Part of the scheme involved receipt of a bribe payment from a city employee. The court held that the city's "loss" of the bribe was insufficient to satisfy the mail fraud statute, id. at 527, rejecting the secret profits theory as viable under McNally. 842 F.2d at 525-526 (mere fact that a fiduciary profits from breach of duty is not sufficient property deprivation to satisfy requirements of the mail fraud statute). While the court explicitly rejected

19

<u>Richerson</u>'s reliance on Justice Stevens' footnote, it never considered <u>Richerson</u>'s ultimate conclusion.

The government argues that the <u>Ochs</u> decision is limited to a disavowal of the secret profit theory and should not be used as a basis for finding that fraudulent obtainment of salary does not result in a property loss.  The government asserts that this circuit has already held that fraudulent obtainment of salary satisfies <u>McNally</u>, citing to <u>United States v. Allard</u>, 864 F.2d 248, 251 (1st Cir. 1989) and <u>Doherty</u>, 867 F.2d at 56.  In <u>Allard</u>, the court held that the fraudulent procurement of a medical license and subsequent renumerated medical practice resulted in the loss of a property right.  846 F.2d at 251.  In <u>Doherty</u>, the court held that an indictment validly charged a loss of property, which stated that an

> objective of the conspiracy [was] for the conspirators to illegally assist relatives, friends and associates in obtaining appointment to or promotion within police departments in the Commonwealth of Massachusetts so that those relatives, friends or associates would receive the benefits of such appointment or promotion; which benefits included the salary or increased salary by reason of appointment or promotion within the police department and whatever pension benefits would accrue by reason of the appointment to or promotion within the police department.

867 F.2d at 56.  The court also upheld those portions of the indictment that charged individual defendants with conspiring to obtain promotions to receive increased salary and pension

20

benefits.  Id.  In Doherty, there was no allegation that any of the defendants or the persons for whom they conspired to obtain employment were unqualified for their positions or caused any material loss to the defendant other than salary and benefits.

The indictment before the court charges a set of circumstances that falls somewhere in between the Allard and Doherty cases and the Richerson case.  In both Allard and Doherty the alleged scheme was undertaken for purposes of obtaining the salaried positions.  In other words, the defendants were directly charged with fraudulently procuring their positions for purposes of defrauding their employers of salary payments.  There are no similar allegations against these defendants.  The instant case is not identical to that considered in Richerson.  In Richerson, the 5th Circuit ultimately rested its decision on the defendant's failure provide material information to his employer.  In this case, the indictment charges that the defendants defrauded their employer of salary and employment benefits not because they failed to provide material information, but because they continued to accrue of salary even though they knowingly acted outside American Honda's conflict of interest policy.

Allard and Doherty are distinguishable and do not provide a sufficient basis for allowing the inclusion of salary loss in the indictment.  As the court has already discussed supra, the Ochs

21

decision does not address the issue before the court. The court recognizes that although the mail fraud statute is limited to the protection of property rights, "the concept of property `is to be interpreted broadly.'" United States v. Dray, 901 F.2d 1132, 1142 (1st Cir. 1990) (citing McNally, 483 U.S. at 356). However, the Ochs court did explicitly warn that the court should not take a view so expansive as to include abstract property losses. 842 F.2d at 525-26. Based on the current state of decisional law in this circuit, the court finds no firm basis to extend Allard and Doherty any further. Defendant Billmyer's objections to the loss of salary allegations are well taken. To the extent that Count II alleges fraudulent procurement of salary and benefits prior to November 18, 1988, those allegations are to be excised.


B.  Objections to Count III

Defendant Cardiges also objects to Count III on the same grounds as those raised against Count II. Defendant Josleyn has joined in Cardiges's motion to dismiss (document no. 167).

Like Count II, Count III charges a violation of 18 U.S.C. § 371. The crux of the charge is that the defendants engaged in a scheme to defraud American Honda and certain Honda dealers. Section 371 is implicated through an alleged use of the mails in

22

furtherance of the scheme. <u>See</u> Second Superseding Indictment, ¶ 98.

The indictment lists the goals and the manner and means of the conspiracy. The indictment continues on to set forth overt acts in furtherance of the conspiracy and acts constituting the underlying mail fraud, including the act of causing an "American Honda sales representative to deposit letters in a post office and authorized depository for mail matter, to be delivered by the United States Postal Service, [to various new Hampshire towns,] urging the dealers to enroll their sales person in a sales training seminar . . . ." Id. at ¶ 108(b)

The indictment is sufficient. It fairly informs the defendants of the charge against them so they may plead an acquittal or conviction in bar of future prosecutions. Count III cannot be dismissed for lack of specificity. Furthermore, Count III adequately charges all the elements of conspiracy and specifically identifies the underlying fraud. Thus, any additional objections to this count are denied for the same reasons outlined in the discussion of Count II, <u>supra</u>.


C. Misjoinder

Defendants Billmyer and Josleyn have also requested that the conspiracy counts be dismissed due to misjoinder. Defendant

23

Cardiges has joined Josleyn's motion. Criminal defendants are properly joined under Rule 8(b) of the Federal Rules of Criminal Procedure only if they are "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim P. 8(b).[3] Because the court finds that the indictment adequately charges a single conspiracy, the motions to dismiss on the basis of misjoinder are denied.

## D. Severance

Defendant Billmyer has moved for an order severing his case from the other co-defendants. The decision to grant or deny a motion for severance is a matter committed to the sound discretion of the trial court. United States v. Martinez, 922 F.2d 914, 922 (1st Cir. 1991). Defendants seeking severance maintain the burden of showing that a "substantial prejudice, amounting to a miscarriage of justice, would result from a joint

---

[3]Rule 8(b) provides:
Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such may be charged in one or more counts together or defendants separately and all of the defendants need not be charged in each count. Id.

24

trial." United States v. Sabatino, 943 F.2d 94, 96 (1st Cir. 1991) (citing United States v. Perkins, 926 F.2d 1271, 1280 (1st Cir. 1991)). The term "prejudice means more than just a better chance of acquittal at a separate trial," United States v. Martinez, 479 F.2d 824, 828 (1st Cir. 1973), and "[i]ncidental prejudice," such as that which necessarily inheres whenever multiple defendants are tried together, "will not suffice." Martinez, 922 F.2d at 922.

In the instant case, the court finds that Billmyer has failed to meet this exacting burden. The Second Superseding Indictment is limited to three defendants and five counts, one of which the government has stated it will dismiss. Although named in only one count, Billmyer is allegedly at the center of the formation of the conspiracy and the government represents that a "very substantial portion of the consolidated trial will involve evidence relating directly to Billmyer." See Government's Incorporated Surreply Memorandum, at 9-10. Any possible prejudicial "spillover" caused by the joinder of offenses and defendants may be minimized by appropriate limiting instructions. Cf. United States v. Natanel, 938 F.2d 302, 308 (1st Cir. 1991); United States v. Mazza, 792 F.2d 1210, 1224 (1st Cir. 1986), cert. denied, 479 U.S. 1086 (1987). Accordingly, the motion for severance is denied.

25

E.  Venue

Finally, Defendant Billmyer argues that venue in New Hampshire is improper because the alleged conspiracies involving Billmyer did not occur in or relate to New Hampshire.  Because this argument is premised upon a finding that the indictment charges multiple conspiracies, the motion for dismissal based on improper venue is denied without prejudice to renew at the close of the government's case.

E.  Reconsideration of Defendant Josleyn's "Motion to Quash"

The court once again denies defendant Josleyn's "Motion to Quash" for the reasons cited in the court's original denial of his motion (document no. 125) as well as the reasons outlined above.

## Conclusion

Defendant Cardiges's "Motion to Dismiss Counts II and III of the Second Superseding Indictment" (document no. 146) and defendant Josleyn's Motion to Dismiss for Misjoinder" (document no. 154) are denied.  Defendant Billmyer's "Renewed Motions to Dismiss and Alternative Motion for Severance" (document no. 150) is granted in part and denied in part.  Count II of the indictment is to excised of all references to schemes to defraud

26

Honda of salary prior to November 18, 1988.  The relief requested

in defendant Josleyn's motions to reconsider (document no. 153)

is denied.  Defendant Billmyer's original "Motions to Dismiss and

Alternative Motion for Severance" (document no. 94) is moot.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge

February 3, 1995

cc:  Michael J. Connolly, Esquire
     David W. Long, Esquire
     Kevin E. Sharkey, Esquire
     Stephen Lyons, Esquire
     Paul J. Twomey, Esquire
     Philip Israels, Esquire